UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TRUMP PLAZA OF THE PALM                CASE NO.: 08-80408-CIV-HURLEY
BEACHES CONDOMINIUM                    Magistrate Judge Hopkins
ASSOCIATION, INC., a Florida
non-profit corporation,

          Plaintiff,

v.

BARBARA MARTINEAU ROSENTHAL,
An individual; and BARBARA
MARTINEAU ROSENTHAL, INC., a
Florida for-profit corporation,

          Defendants.

_____/

## DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. 11 AND REQUEST FOR FEES PURSUANT TO 28 U.S.C. §1927

Defendants, Barbara Martineau Rosenthal and Barbara Martineau Rosenthal, Inc. (collectively, "Rosenthal"), pursuant to Fed.R.Civ.P. 11, respectfully requests that this Court impose sanctions against Plaintiff and its counsel, Robert Rivas, Esq., J. Bruce Culpepper, Esq. and the law firm of Sachs Sax Caplan (collectively, Plaintiff and its attorneys may be referred to as "Violators"), for maintaining positions in litigation unsupported by the application of existing law and fact, and for engaging in vexatious litigation.

Violators have filed an Amended Complaint [D.E.#10] seeking to enforce trademark rights the Plaintiff does not own. In the same pleading, Violators have sought relief relating to *inter alia* Rosenthal's advertising, even though Violators have dropped the false advertising claim that appeared in the original Complaint. Finally, Violators are seeking relief under a federal statute that requires, as a predicate, ownership of a famous trademark. Even assuming *arguendo* that Plaintiff owned the purported mark at issue, Violators would still have no good faith basis for asserting that the Plaintiff's mark is famous in light of the celebrity status enjoyed

1

Case No. 08-80408-CIV-HURLEY

by Donald Trump and his various federally-registered trademarks, including *inter alia* TRUMP PLAZA.

In order to comply with Fed.R.Civ.P. 11, claims must be supported by established law and fact. The Plaintiff's allegations and claims are not supported by either established law or fact, and therefore, Violators should be sanctioned for the fees and costs they have caused and are causing Rosenthal to incur.

In support of this Motion, Rosenthal respectfully refers the Court to the Memorandum of Law below.

## MEMORANDUM OF LAW

### I.      INTRODUCTION.

Violators have departed from their obligations under Rule 11. Violators are seeking to enforce trademark rights that they do not own. According to the evidence already before the Court, Donald Trump is the owner of such rights. Violators are also seeking to restrict Rosenthal's advertising, notwithstanding that Violators dropped the false advertising claim that appeared in the original Complaint. Finally, Violators have filed and are maintaining a claim requiring *inter alia* ownership of a famous mark. Since Plaintiff does not own the trademark rights at issue, Violators cannot establish that the Plaintiff owns a famous mark, much less that it has the requisite fame.

By virtue of Violator's violation of Rule 11, this Court should impose sanctions against Violators, including without limitation requiring Violators to pay Rosenthal's cost of defending against Violators' frivolous claims.

2

Case No. 08-80408-CIV-HURLEY

Violators have also engaged in vexatious litigation.  After unsuccessfully pursuing a Bar Complaint against Rosenthal for *inter alia* using a form required by Plaintiff and its counsel, Violators have resorted to asserting claims in this action that Violators simply do not have standing to bring.  The Federal Courts do not exist in order to provide the Violators with yet another means of harassing Rosenthal.

## II.     FACTUAL BACKGROUND.[1]

### A.     Plaintiff's Assertion Of Rights It Does Own, And For Which It Lacks Standing.

Plaintiff is a condominium association that administers the common areas of one, single residential property[2] located in Palm Beach, Florida.  Plaintiff claims to **_use_** the purported **_unregistered_** (i.e., common law) trademark "TRUMP PLAZA OF THE PALM BEACHES." (A.C., ¶¶9, 19).  Nowhere in its Complaint or Amended Complaint does Plaintiff allege that it is the owner of the purported unregistered mark.

The purported unregistered mark that Plaintiff claims to *use* incorporates, in its entirety, the federally-registered trademark "TRUMP PLAZA," which is owned by Donald Trump. *See* Motion To Dismiss Amended Complaint, Composite Exhibit "1" [D.E.#11-2] (certified copies of various TRUMP PLAZA trademark registrations from the U.S. Patent & Trademark Office ("USPTO")).

---

[1] References to the Amended Complaint [D.E.#10] shall appear as "A.C., ¶__."

[2] The residential property was originally named "The Plaza Of The Palm Beaches, A Condominium."  The name was changed to "Trump Plaza Of The Palm Beaches" in the Second Amendment to the Declaration of Condominium Of Plaza Of The Palm Beaches, A Condominium, which was signed on November 17, 1986 and recorded in the public records of the State of Florida on April 1, 1987.

3

Case No. 08-80408-CIV-HURLEY

Mr. Trump owns the following federal trademark registrations for TRUMP PLAZA (collectively, the "TRUMP PLAZA Registrations"):

1.    U.S. Registration No. 3,231,060 for the word mark "TRUMP PLAZA" in connection with "[r]eal estate services, namely, listing, leasing, and managing residential property" and "[r]eal estate development of commercial and residential property." Mr. Trump started using the mark in February, 1985. *See id.*

2.    U.S. Registration No. 3,079,610 for the mark "TRUMP PLAZA" in connection with "[r]eal estate services, namely, listing, leasing, and managing commercial property." Mr. Trump began using this mark in February, 1985. *See id.*

3.    U.S. Registration No. 2,577,243 for the word mark "TRUMP PLAZA" and typed drawing in connection with "[h]otel, bar and restaurant services." Mr. Trump started using this mark in February, 1985. *See id.*

4.    U.S. Registration No. 1,620,477 for the word mark "TRUMP PLAZA" and typed drawing in connection with "casino services." First use of this mark began in February, 1985.

In addition to the TRUMP PLAZA Registrations, the USPTO records reflect that Mr. Trump owns over 100 trademark registrations or applications for trademarks incorporating the "TRUMP" name.

In its Amended Complaint, Plaintiff asserts that it has used the alleged mark at issue since 1986. *See* A.C., ¶9. However, the TRUMP PLAZA Registrations reflect that Mr. Trump started using TRUMP PLAZA in February, 1985, *prior* to Plaintiff's alleged use. Thus, based upon the Plaintiff's own allegations, it has conceded that it did not use, on an exclusive basis, the alleged mark at issue *prior to* Mr. Trump's use of TRUMP PLAZA. This concession is significant, because it means that Plaintiff never obtained an enforceable right to exclude others, since it was never in a position to exclude Mr. Trump from using TRUMP PLAZA.

Similarly, Plaintiff asserts that it has rights in the Internet domain name, trumpplazaofthepalmbeaches.com, which incorporates the purported mark. However, since

4

Case No. 08-80408-CIV-HURLEY

Plaintiff never acquired any rights in the purported mark, Mr. Trump is the only person with any standing to assert claims based upon the use of TRUMP PLAZA in an Internet domain name or otherwise.  To add insult to injury, Violators even admit that Rosenthal transferred the trumpplazaofthepalmbeaches.com domain name to Mr. Trump *prior to* the commencement of the action.

**B.      Plaintiff Seeks Relief For False Advertising Notwithstanding That It Dropped That Claim.**

When filing its Amended Complaint, the Plaintiff dropped the false advertising claim that it asserted in the original Complaint.  Presumably, the false advertising claim was dropped because it was brought to Violators' attention that a false advertising claim requires a competitive injury, and given the licensing requirements and licenses presently held by Rosenthal, the Plaintiff may not lawfully compete with Rosenthal.  Thus, there can be no competitive injury, and no basis for asserting a false advertising claim.

However, while Plaintiff dropped the false advertising claim, it is nonetheless maintaining its demand for relief relating to such a claim.  For example, the Amended Complaint's prayer for relief still seeks restrictions on advertising, including radio and television commercials. *See* A.C., Prayer for Relief 1.A and C.  There is simply no credible basis for Violators to seek the relief associated with a false advertising claim when they have dropped the false advertising claim.

5

**C.     The Facts And Law Do Not Support A Claim For Trademark Dilution.**

There are two keys facts that preclude Plaintiff's claim under the Trademark Dilution Revision Act ("TDRA"), 15 U.S.C. §1125(c):   first, that Plaintiff is not the owner of the purported mark; and second, the purported unregistered mark fails to meet the TDRA's current "fame" requirement.

Under the TDRA, a mark "is famous if it is widely recognized by the general consuming public of the United States as a designation of source of goods or services of the mark's owner." 15 U.S.C. §1125(c)(2)(A).  However, Violators have no evidence to support their claim that the purported mark is famous, and in light of the celebrity status that Mr. Trump enjoys by virtue of his nationally-televised show, *The Apprentice*, and other mass-media appearances, there is simply no way that Violators can obtain such evidence.  The TRUMP PLAZA Registrations and Mr. Trump's celebrity status directly undercuts Violators' naked assertion that the purported mark is famous.

**D.     Violators Engage In Vexatious Litigation.**

This is not the first time that Violators have taken vexatious actions against Rosenthal; it is, however, the first time that Violators have resorted to the Federal Courts in order to harass Rosenthal.

In or about July 2007, Violators filed a complaint against Rosenthal with the Florida Bar, alleging that Rosenthal had engaged in the unauthorized practice of law. *See, e.g.,* Exhibit "1" (Violators' correspondence to Bar Counsel).  Violators' efforts to prevent Rosenthal from representing unit owners in Plaintiff's building ultimately proved unsuccessful, and on June 19, 2008, the Florida Bar ruled that Rosenthal did not engage in the unauthorized practice. *See*

Case No. 08-80408-CIV-HURLEY

Exhibit "2" (Bar Counsel's Decision).  While the Bar's Decision is attached in its entirety as Exhibit "2," there is one point that bears mention here.  Among the various allegations that Violators presented to the Bar, it is apparent that Violators accused Rosenthal of engaging in the unauthorized practice of law for providing her clients—unit owners—with a Letter of Representation form. *See* Exhibit "2" at 2.  However, the evidence before the Bar ultimately revealed that Letter of Representation form that Rosenthal used "originated with, and is required by, counsel for [Plaintiff]." *See Id.; see also* Exhibit "3" (Letter from Plaintiff and its counsel addressing and attaching the Letter of Representation form).

Having failed in its efforts to prevent Rosenthal from doing business with the unit owners in Plaintiff's building, Violators have now attempted to prevent Rosenthal from using the name of the building in her advertising.  This is why the original Complaint in this action included a claim for false advertising and seeks various restrictions relating to advertising.  No doubt the Violators believed that if they could prevent Rosenthal from being able to reference the name of Plaintiff's building, they would effectively be able to prevent Rosenthal from being able to represent the Plaintiff's unit owners in connection with real estate transactions.

When Violators' history of actions against Rosenthal is considered, Violators' true intentions become readily apparent.  Certainly, Violators are less concerned with asserting legitimate claims than they are with continuing their harassment of Rosenthal.

Case No. 08-80408-CIV-HURLEY

### III. ARGUMENT.

#### A. THE CLAIMS IN THE AMENDED COMPLAINT ARE UNSUPPORTED BY APPLICATION OF LAW AND FACT, AND THEREFORE, VIOLATORS' HAVE VIOLATED RULE 11.

##### 1. Rule 11 prohibits Violators from engaging in frivolous litigation and asserting baseless claims.

Federal Rule of Civil Procedure 11 ("Rule 11") provides a remedy in the form of sanctions against parties, such as the Violators, who engage in frivolous litigation and assert baseless claims. Rule 11 provides, in relevant part:

> (b)     By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*,—
>
> (1)     it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)     the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3)     the allegations and other factual contentions *have evidentiary support* or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed.R.Civ.P. 11 (*emphasis added*).

Rule 11 sanctions "were designed to discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *United States v. Milam*, 855 F.2d 739, 742 (11th Cir. 1988); *see also Massengale v. Ray et al.*, 267 F.3d 1298, 1302 (11th Cir. 2001)(the provisions of Rule 11 are designed to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers" *quoting Donaldson v. Clark,* 819 F.2d 1551, 1557 (11th Cir. 1987)). Accordingly, a district court is required to impose appropriate

8

Case No. 08-80408-CIV-HURLEY

sanctions, after notice and a reasonable opportunity to respond, "where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." *Milam*, 855 F.2d at 742.

Under Rule 11, an attorney is obligated, *inter alia*, to make a reasonable inquiry into whether his client's claims are objectively frivolous, either based on the facts or the law.  *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996).  If an attorney has failed to conduct a reasonable inquiry into the matter, "the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound." *Id*. at 1254; *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995).  Moreover, an attorney must conduct an independent investigation, and it is not sufficient for the attorney to rely upon the allegations of his client, even if his client is himself an expert. *See Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("there is no doubt that Judin failed to meet the minimum standards imposed by Rule 11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney.").

In *Worldwide Primates*, the Eleventh Circuit enunciated the test for the imposition of Rule 11 sanctions as follows:

> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.  If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.

*Id.* at 1254 (citations omitted).

Case No. 08-80408-CIV-HURLEY

Other courts have held that "[w]hen testing conduct under Rule 11, a court is to use an objective standard and examine the reasonableness of the conduct under the circumstances and what was reasonable to believe at the time the pleading was submitted." *Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.*, 2006 WL 4792784, *2 (M.D. Fla.), *citing Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998).   In order to determine whether the imposition of sanctions is appropriate, "a two step inquiry is required:  (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Id.*

It is within the Court's discretion to impose sanctions when Rule 11 has been violated. *Massengale,* 267 F.3d at 1302 (*quoting Donaldson*, 819 F.2d at 1557); *Riccard v. Prudential Insurance Co.,* 307 F.3d 1277, 1295 (11th Cir. 2002).  Rule 11 is violated when a pleading submitted to the Court is not well-grounded in fact and is legally untenable. *See* Fed.R.Civ.P. 11(b); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed. 2d 359 (1990).

Sanctions have been issued under Rule 11 where a party continues to maintain a position not supported by fact or law after being sufficiently advised of prevailing law or facts, and fails to withdraw or appropriately correct a pleading under the Rule's "safe harbor" provision.  Rule 11(c)(1)(A) ("A motion for sanctions…shall not be filed with or presented to the Court unless, within 21 days after service of the motion, the challenged … claim … is not withdrawn or appropriately corrected."); *Phonometrics, Inc. v. Economy Inns of America*, 349 F.3d 1356 (Fed. Cir. 2003) (Rule 11 sanctions affirmed by Federal Circuit where plaintiff refused to withdraw

Case No. 08-80408-CIV-HURLEY

infringement claims, and continued to submit briefs in support thereof, in the face of a change in law and a Rule 11 safe-harbor letter).

> **2.      Violators have violated Rule 11 because the Plaintiff lacks standing to assert the claims in the Amended Complaint.**

The Amended Complaint contains a series of claims that the Plaintiff simply has no standing to assert.

The Lanham Act is designed to protect trademark owners from suffering injury to their ability to compete in the marketplace and to the goodwill attached to their valid, protectable trademarks. *See Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1167 (11th Cir. 2007).  Here, Plaintiff (a) ***does not own*** **a** ***valid, protectable mark*** and (b) ***does not compete against Rosenthal*** and, thus, has no commercial injury.  The Lanham Act was not designed to protect this Plaintiff.  Accordingly, Plaintiff does not have prudential standing.

> **a.      Plaintiff has no standing to bring trademark-related claims because it does not own the mark.**

The threshold inquiry when analyzing whether a plaintiff has standing to pursue a claim for trademark infringement involves determination of whether the plaintiff owns a valid, protectable trademark. *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 797 (11th Cir. 2003); *Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Development, Inc.*, 824 F.Supp. 1576, 1581-82 (S.D. Fla. 1993); *see Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989); *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347, 1356 (S.D.Fla. 1998) ("A court may not reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant protection").

11

Case No. 08-80408-CIV-HURLEY

Notably, an express requirement for a claim asserted under Lanham Act section 43(c), 15 U.S.C. § 1125(c), is that only the "**owner**" of famous mark may bring a claim for trademark dilution.  Likewise, pursuant to section 43(d), 15 U.S.C. § 1125(d), a person may only be liable for cyberpiracy to the **"owner"** of a mark.  Here, however, it is apparent from the Amended Complaint and USPTO records that Plaintiff is **not** the owner of the subject mark.[3]

Indeed, Plaintiff only alleges mere **use** of the purported mark "TRUMP PLAZA OF THE PALM BEACHES."  *See* A.C., at ¶¶ 9, 19.  Plaintiff never alleges that it **owns** the purported mark.  In light of the third-party TRUMP PLAZA Registrations, Plaintiff is simply not in a position to allege ownership of the purported mark, as such an allegation would be in direct contravention of Mr. Trump's Federally-recognized exclusive rights.

Under the Lanham Act, one may not adopt and claim ownership of exclusive rights in a trademark if it "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned . . ." if the use mark to be adopted is likely to cause confusion or mistake or to deceive. 15 U.S.C. §1052(d).

_____

[3] Plaintiff's state law claims fail for the same reason.  For instance, this Court has held that "the analysis under the Lanham Act for trademark infringement also applies to claims of trademark infringement . . . under Florida common law." *Carnival Corporation v. Seaescape Casino Cruises, Inc.*, 74 F.Supp.2d 1261, 1264 n.2 (S.D. Fla. 1999); *see also Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641 (11th Cir. 2007) (plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law); *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (where plaintiff failed to establish its Lanham Act claims, the defendant was also entitled to summary judgment with respect to the claims brought under the Florida common law of unfair competition).  Similarly, Plaintiff's claim for dilution under state law is also restricted to the owner of a mark. *See* §495.151, Fla.Stat. (2008) ("The **_owner_** of a mark that is famous in this state shall be entitled . . . ." (emphasis supplied)).  Since Plaintiff does not own its purported mark, Plaintiff's state law claims fail as a matter of law.

Case No. 08-80408-CIV-HURLEY

"It is a fundamental principal of trademark law that the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace." *Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football Co. LLC,* 418 F.Supp.2d 501, 505 (S.D.N.Y. 2006); *see also Pacific Supply Co-op. v. Farmers Union Central Exchange, Inc.*, 318 F.2d 894 (C.A. Wash. 1963)("Trademark Rights are not dependent on statutory enactment, but ***arise under common law from prior exclusive appropriation or adoption and use***." (emphasis supplied)). Indeed, courts have recognized that "[n]ot every *use* of a mark will suffice to create *enforceable* rights." *Hawaii-Pacific Apparel Group, Inc.,* 418 F.Supp.2d at 506 (emphasis supplied). Ultimately, "[t]he user who ***first*** appropriates the mark obtains an ***enforceable right to exclude others*** from using it . . . ." *Id.* at 505 (emphasis supplied).

In the instant case, where Mr. Trump owns the federally-registered TRUMP PLAZA Registrations, there is no way that Plaintiff could have acquired any rights to the purported mark at issue. The USPTO records reflect that Mr. Trump started using TRUMP PLAZA in commerce in February, 1985. In contrast, Plaintiff alleges that it has used the purported trademark at issue since 1986, *see* A.C., ¶9, roughly a year or more *after* Mr. Trump started using his trademarks. Thus, by its own allegations, Plaintiff concedes that it did not use, *on an exclusive basis*, the alleged mark at issue *prior to* Mr. Trump's first use of TRUMP PLAZA. Accordingly, Plaintiff did not obtain "an enforceable right to exclude others . . . ." *Hawaii-Pacific Apparel Group, Inc.*, 418 F.Supp.2d at 505.

Where, as here, a party cannot establish prior use, there are a series of statutory bars to registration that, for similar reasons, preclude Plaintiff from seeking to enforce rights in the alleged trademark at issue. For example, Plaintiff is statutorily barred from registering the

alleged trademark because the alleged mark "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another . . . ." 15 U.S.C. §1052(d).  Where a party registers a trademark on the Principal Register in the U.S. Patent & Trademark Office, the registration constitutes "prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration." *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16.19 (4th ed. 1992) ("A trademark registration on the federal Principal Register is at least prima facie evidence of the registrant's ownership of the mark.").  Thus, Mr. Trump's federally registered TRUMP PLAZA Registrations are evidence of his *exclusive right* to use the mark, and therefore, the TRUMP PLAZA Registrations preclude Plaintiff from acquiring any rights in the purported trademark at issue.

Plaintiff is ultimately doomed by its own allegations.  By alleging that it started "using" the alleged trademark and/or trade name at issue *after* Mr. Trump commenced use of his federally-registered TRUMP PLAZA trademarks in commerce, Plaintiff admits that it is not the user who first appropriated the mark.  Accordingly, Plaintiff never acquired the right to exclude others from using it.

14

Case No. 08-80408-CIV-HURLEY

> **i.    Plaintiff's addition of a geographically-descriptive identifier to TRUMP PLAZA does not permit Plaintiff to claim rights independent of the TRUMP PLAZA Registrations.**

In analyzing whether Plaintiff owns a protectable mark, courts consider the dominant portions[4] of the purported mark and ***disregard the geographically descriptive suffix*** attached thereto, which is generally unprotectable. *See* 15 U.S.C. 1052(e).  For example, in *Montana Professional Sports, LLC v. Leisure Sports Management, Inc.*, 422 F.Supp.2d 1271 (M.D.Fla. 2006), the court compared the marks "BILLINGS OUTLAWS" and "OSCEOLA OUTLAWS" and held that:

> The words BILLINGS and OSCEOLA are descriptive geographic terms that offer little to alter the commercial impression of the marks at issue.  They should be discounted when the marks are compared for similarities.  Thus, when viewed in their entireties with the non-dominant features appropriately discounted, the overall impression created by the respective OUTLAWS word marks is identical, including appearance, sound and meaning.

*Montana Prof. Sports, LLC v. Leisure Sports Mgmt, Inc.*, 422 F.Supp.2d at 1279; *see* also *Birthright v. Birthright Inc.*, 827 F.Supp. 1114, 1135 (D.N.J. 1993) (finding, despite fact that both parties use of "Birthright" name generally occurred with a geographic modifier; that when

---

[4] It is proper to give greater force and effect to the dominant feature of the marks. *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1065 (3rd Cir. 1991); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565,1570 (Fed.Cir. 1983) (applicant's mark so resembled opposer's registered marks that it was not entitled to registration); *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 167 F.Supp.2d 770, 783 (E.D.Pa. 2001) (overall commercial impression of the marks "MIRACLESUIT" and "THE MIRACLE BRA" is confusingly similar because the marks share the same dominant term "Miracle"); *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 104 F.Supp.2d 427, 457-458 (D.N.J. 2000) ("The addition of 'Systems,' 'Software,' 'Technologies,' and 'Inc.' are generic or common descriptive terms and not distinctive for the respective businesses and products").

15

Case No. 08-80408-CIV-HURLEY

the parties use the name "Birthright," with or without a geographic modifier, they are using the same mark because the word "Birthright" constituted the dominant portion of the mark).

It is also well-settled in this Court that geographic identifiers cannot dispel a likelihood of confusion and, thus, cannot be the basis for claiming exclusive rights in a mark. *Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida, Inc*., 200 U.S.P.Q. 282 (S.D.Fla. 1978) (noting that it is settled law that use of a geographical prefix or suffix is not sufficient to obviate the likelihood of confusion).  Where a registrant owns exclusive rights to a mark, a second-comer cannot gain rights in the substantially same mark by merely adding a geographic identifier onto it.[5] *See Foxtrap, Inc. v. Foxtrap, Inc*., 671 F.2d 636, 641 (D.C.Cir. 1982) (finding geographically descriptive legend "of Philadelphia" would do little to counter any likelihood of confusion between the two establishments).

Here, Plaintiff does not allege ownership of the purported mark.  However, even overlooking this failure, Plaintiff—as a matter of law—cannot demonstrate that the purported mark is valid or that it has rights in such mark because: (1) the geographically-descriptive portion of Plaintiff's purported mark (*i.e*., "Of The Palm Beaches") must be disclaimed pursuant to applicable federal law, 15 U.S.C. § 1052(e)(2); (2) eliminating the geographically-descriptive aspects of Plaintiff's purported mark renders it identical to Mr. Trump's federally-registered TRUMP PLAZA trademarks; and (3) even if the geographically-descriptive portion of the purported mark at issue is not eliminated, the dominant feature of the purported mark is still

---

[5] Reliance on geographic identifiers to gain exclusive trademark rights has been disfavored since at least the 1800's.  In 1871, the U.S. Supreme Court explained that geographic identifiers "point only at the place of production, not to the producer, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies." *Delaware & Hudson Canal Co. v. Clark*, 80 U.S. 311 at 324-325 , 20 L.Ed. 581 (1871).

"TRUMP PLAZA."  Since Plaintiff has no rights in TRUMP PLAZA or any confusingly similar mark, Plaintiff has no prudential standing to assert trademark-related claims.

### 3. Violators have violated Rule 11 because there is no legal or factual basis for Violators' assertion of a claim of dilution.

Plaintiff's claim for trademark dilution is unsupported by application of existing fact and law.

As a threshold matter, a claim for trademark dilution under 15 U.S.C. §1125(c) and §495.151, Fla.Stat., must be brought by the owner of a mark.  As noted above, however, Plaintiff never alleges that it is the owner of the purported mark at issue, and in the face of the TRUMP PLAZA Registrations, it cannot as a matter of law be the owner of the purported mark at issue.

Even overlooking this failure, Violators cannot establish that the purported mark meets the Lanham Act's current "fame" requirement.  Indeed, recent federal legislation has raised the bar as to what marks may be considered "famous."  The TDRA, cited by Plaintiff in its Amended Complaint at ¶ 31, amended the Lanham Act to provide, in pertinent part, that, "…a mark is famous if it is *widely recognized* **by the general consuming public of the United States** as a designation of source of the goods or services of the mark's owner." 15 U.S.C. §1125(c)(2)(A) (emphasis added).  Notably, pursuant to the TDRA, so-called "niche fame," or fame in a particular market, is no longer sufficient to entitle a mark-holder to pursue an action for trademark dilution. *Century 21 Real Estate LLC v. Century Ins. Group*, Slip Copy, 2007 WL 484555, *14 (D.Ariz., Feb. 9, 2007) ("protection is denied to marks that are famous in only 'niche' markets").  Instead, a mark must have achieved wide-spread recognition among the general consuming public throughout the United States. 15 U.S.C. § 1125(c)(2)(A).

17

Case No. 08-80408-CIV-HURLEY

Here, Plaintiff failed to allege a single fact that shows that it is plausible that the purported unregistered mark is famous among the general consuming public of the United States and raise a right to relief above the speculative level. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-66 (2007). Instead, Plaintiff only nakedly alleged that the purported mark is famous, A.C., ¶¶ 13, 19; however, Plaintiff's naked assertion "stops short of the line between possibility and plausibility of entitlement to relief." *Bell Atlantic*, 127 S.Ct. at 1966.

As a matter of law, the purported mark cannot be famous in light of the TRUMP PLAZA Registrations and the celebrity status that Mr. Trump enjoys by virtue of his nationally-televised show, *The Apprentice*, and other mass-media appearances.[6] The TRUMP PLAZA Registrations and Mr. Trump's celebrity status directly undercut Plaintiff's naked assertion that the purported unregistered mark is famous among U.S. consumers.

### 4. Violators have violated Rule 11 by continuing to seek relief for false advertising after dropping the false advertising claim.

It is axiomatic that a party may not seek relief unless that relief is based upon a legally cognizable claim. Here, Plaintiff's Prayer for Relief includes *inter alia* requests to restrict Rosenthal's advertising, notwithstanding that Plaintiff has dropped its false advertising claim.

---

[6] Even if Mr. Trump were not the owner of the TRUMP PLAZA Registrations, a factor to be considered by this Court in evaluating "famousness," is the "nature and extent of use of the same or similar marks by third parties." 15 U.S.C. §1125(c)(1)(G). "A mark that is merely one in a 'crowd' of similar marks will not usually be 'famous.'" MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §24:92 (4th ed.). The TRUMP PLAZA Registrations cover a variety of goods and services, including: listing, leasing, and managing residential and commercial property; real estate development of commercial and residential property; hotel, bar and restaurant services; and casino services. Accordingly, the purported mark is merely "one in a crowd."

18

Case No. 08-80408-CIV-HURLEY

An attorney's efforts are evaluated under a subjective standard, namely, whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *See Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir. 1987).   However, no reasonable attorney would continue to seek relief for claims that had been dropped from the action.

**B.    PLAINTIFF HAS COMPLIED WITH THE NOTICE REQUIREMENTS OF RULE 11.**

Rosenthal provided Violators with notice of the Rule 11 violations, and provided Violators with an opportunity to withdraw the Amended Complaint as required by Rule 11. Violators failed to withdraw same within twenty-one (21) days after the Rule 11 notice was served, and thus, Violators are maintaining claims in this litigation with actual notice of the factual and legal deficiencies identified herein.  Accordingly, sanctions are warranted.

**C.    SANCTIONS ARE ALSO APPROPRIATE PURSUANT TO 28 U.S.C. §1927.**

In addition to Rule 11, sanctions should also be imposed against Defendants' counsel pursuant to 28 U.S.C. §1927 for engaging in vexatious litigation, and unreasonably multiplying the cost of the proceedings through the assertion of claims not supported by the application of existing fact and law.  As courts have noted, the "purpose of §1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them." *Footman v. Cheung*, 341 F.Supp.2d 1218, 1223 (M.D. Fla. 2004).

The assertion of claims which are not supported by the application of existing law and fact, particularly when done for malevolent purposes as Violators have done here, is the sort of abusive practice that §1927 is intended to prevent.

19

Case No. 08-80408-CIV-HURLEY

In the face of Violators' legally and factually defective claims, Violators should be required to pay the costs of proving that such claims are defective and utterly without merit.

## IV.    __CONCLUSION__

Rosenthal respectfully requests that this Court impose sanctions against the Violators, including without limitation reimbursing Rosenthal her legal fees and costs associated with defending against Violators' defective claims.

Respectfully submitted,

FELDMAN GALE, P.A.
Counsel for Rosenthal
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  305-358-5001
Facsimile:  305-358-3309

s/ Samuel A. Lewis

By: _____
      Samuel A. Lewis / Fla. Bar No. 55360
      E-mail: SLewis@FeldmanGale.com
      Susan J. Latham / Fla. Bar No. 687391
      E-mail: SLatham@FeldmanGale.com

Case No. 08-80408-CIV-HURLEY

## **CERTIFICATE OF COMPLIANCE WITH S.D.Fla.L.R. 7.1**

Counsel for Rosenthal hereby certifies that, pursuant to S.D.Fla.L.R. 7.1, a good faith effort was made to resolve the issues contained in this Motion without success.

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on this 11th day of March, 2009, I served the foregoing document on all counsel of record identified on the attached Service List in the manner appropriate under the Rules.

s/ Samuel A. Lewis
_____
Samuel A. Lewis

## **SERVICE LIST**

*Trump Plaza of the Palm Beaches Condo. Assoc., Inc. v. Barbara Martineau Rosenthal, et al.*
Case No. 08-80408-CIV-HURLEY/HOPKINS
United States District Court, Southern District of Florida

Robert Rivas
RRivas@ssclawfirm.com
J. Bruce Culpepper
BCulpepper@ssclawfirm.com
Sachs Sax Caplan
Counsel for Plaintiff
310 W. College Ave., 3rd Floor
Tallahassee, Florida 32301
Telephone: 850-412-0306
Facsimile: 850-412-0909