**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-80408-CIV-HURLEY**

**TRUMP PLAZA OF THE PALM BEACHES
CONDOMINIUM ASSOCIATION, INC.,**
      **plaintiff,**

**vs.**

**BARBARA MARTINEAU ROSNETHAL, and
BARBARA MARTINEAU ROSENTHAL, INC.,**
      **defendants.**

_____/

**ORDER GRANTING-in-PART and DENYING-in-PART
DEFENDANTS' CONVERTED MOTION FOR SUMMARY JUDGMENT**

    **THIS CAUSE** is before the court on defendants Barbara Martineau Rosenthal and Barbara

Martineau Rosenthal, Inc.'s (collectively "Rosenthal") motion to dismiss the plaintiff's federal and

state trademark and trade name related claims for lack of standing [DE # 11], which the court, after

notice to the parties, *sua sponte* converted into a motion for summary judgment [DE# 24].  Also

before the court is Rosenthal's motion for Rule 11 sanctions charging plaintiff and its counsel,

Robert Rivas, Esq., Bruce Culpepper, Esq. and the law firm of Sachs Sax Caplan, with the pursuit

of positions in litigation unsupported by the application of existing law and fact and vexatious

litigation [DE# 26].[1]

---

[1]  The vexatious litigation allegations refer to an earlier dispute between the parties arising
out of a July 2007 bar complaint in which the plaintiff Trump Plaza accused Rosenthal of the
unauthorized practice of law in her representation of Trump Plaza unit owners [DE# 26-1].  On June
19, 2008, the Florida Bar issued opinion letter finding insufficient evidence to sustain the charges
and closed its file [DE# 26-2].  Rosenthal alleges that the complaint in this lawsuit, filed April 18,
2008, and amended on July 2, 2008, is a continuation of plaintiff's earlier unsuccessful litigation
abuse in that bar proceeding.

After careful review of the parties' legal memoranda, evidentiary submissions and oral arguments, the court, for the reasons set forth below, concludes that the plaintiff enjoys constitutional and prudential standing to bring its Lanham Act claim for false association or affiliation, 15 U.S.C. §1125(a)(1)(A), but lacks standing to bring its Lanham Act claims for trademark dilution, 15 U.S.C. §1125(c) and cybersquatting, 15 U.S.C. §1125(d).   Accordingly, the court will deny Rosenthal's converted motion for summary judgment on the false association or affiliation claim (Count 1), but will grant her motion and dismiss the remaining federal claims (Counts 2 and 3) for lack of standing.

## I. <u>Facts</u>

The plaintiff, Trump Plaza of the Palm Beaches ("Trump Plaza"), is a condominium association that administers a residential condominium in West Palm Beach, Florida.   The condominium, originally named "The Plaza of the Palm Beaches, A Condominium,"  was renamed "Trump Plaza of the Palm Beaches" when Donald Trump acquired the property and began selling condominium units.   The name change was memorialized in the Second Amendment to the Declaration of Condominium of Plaza of the Palm Beaches, A Condominium" signed November 17, 1986 and recorded April 1, 1987.

Although this amendment to the declaration was not signed by Donald Trump or anyone authorized to act on his behalf, Trump Plaza asserts Donald Trump gave his permission to use the name at or about the time of the name change and so Trump Plaza has continually utilized this designation to the present.   In a letter dated September 4, 2008, The Trump Organization acknowledged that Trump Plaza enjoys its conditional permission to use the Trump name as part of

2

the title of the condominium.[2]

"Trump Plaza of the Palm Beaches" is not a federally registered trademark. [3]

The unregistered mark, "Trump Plaza of the Palm Beaches," incorporates, in its entirety, the federally registered mark "Trump Plaza" which is owned by Donald Trump, who is not a party to this action.[4]  In addition, USPTO records show that Mr. Trump owns over 100 trademark registrations or applications for trademarks incorporating the "Trump" name.

---

[2]  The letter from The Trump Organization's New York counsel states that Donald Trump "has consented to the use by the Condominium of the name "Trump" as part of both the name of the Condominium ("Trump Plaza of the Palm Beaches, a Condominium") and the name of the Condominium Association, Trump Plaza of the Palm Beaches Condominium Association, Inc." This permissive use is expressly conditioned on Trump Plaza's ability to maintain and operate the condominium in conformity with "the standards of quality and luxury associated with the 'Trump' brand." [DE# 34-3].  Thus, at a minimum, Trump Plaza has an express license to use the Trump mark.  Although not developed in this litigation, Mr. Trump's purchase and marketing of the property as Trump Plaza coupled with the passage of time prior to the issuance of the confirmatory letter of Sept. 4, 2008, at least raises the possibility that Trump Plaza may have accrued rights to the Trump mark under the doctrine of acquiescence. *See generally, SunAmerica Corp. v. Sun Life Assur. Co. Of Canada,* 77 F.3d 1325 (11th Cir. 1996).

[3]  The Association acknowledges it has never sought to obtain a federal trademark registration for the mark "Trump" or "Trump Plaza," explaining that it has not done so because Mr. Trump is a living individual and his written consent would be required in order for it to register any mark with his name in it.

[4]  USPTO records show that Trump owns the following registrations over the mark "Trump Plaza":
(1) No. 3,231,000 for mark "Trump Plaza" in connection with real estate services, listing and managing of residential property, and development of residential and commercial property, which mark was adopted by Mr. Trump in 1985.
(2) No. 3,079,610 for mark "Trump Plaza" in connection with real estate services, specifically, listing, leasing and managing commercial property, also adopted for use by Mr. Trump in 1985;
(3) No. 2,577,243 for mark "Trump Plaza" and typed drawing in connection with hotel, bar and restaurant services since 1985;
(4) No. 1,620,477 for mark "Trump Plaza" and typed drawing in connection with casino services since 1985.

Defendant Barbara Martineau Rosenthal is a residential real estate broker operating under the name "Barbara Martineau Rosenthal, Inc."  She is licensed by the State of Florida to operate as a real estate agency and a broker.

Rosenthal has earned a series of broker "designations" from the National Association of Realtors which she references in her advertisements. [5]  She routinely juxtaposes the name "Trump Plaza of the Palm Beaches" in advertisements along with the descriptive phrase, "Your Designated Broker," to market her services.  It is the configuration of her advertisements with these two elements, combined with other visual depictions of Trump Plaza, that the plaintiff claims constitutes false and misleading representations of Rosenthal's association or affiliation with Trump Plaza. Rosenthal, on the other hand, stands by her advertisements and asserts that they are no different from that of any other realtor listing properties for sale in Trump Plaza.  This then is the nub of the dispute.  Trump Plaza claims that Rosenthal is misusing its mark, making a false and misleading statement that she has some association or affiliation with Trump Plaza and is thereby hijacking Trump Plaza's reputation and good will for her own financial benefit.

To demonstrate Rosenthal's intentional usurpation of the Trump mark, Trump Plaza points to Rosenthal's registration of the Internet domain name "trumpplazaofthepalmbeaches.com."  This was done without the knowledge or consent of Trump Plaza.  Rosenthal used the accompanying Website to advertise her services and described herself as "Your Designated Broker."

---

[5]  According to Rosenthal, the term "designation" as a description of her professional credentials in this context has a specialized meaning, roughly analogous to "board certification" for attorneys.  That is, her self description as a "designated" broker signifies the profession's recognition of additional, heightened qualifications she has demonstrated as a realtor.

## II.  Claims in this Case

In  its now operative amended complaint [DE#34], the Trump Plaza asserts three  federal claims against Rosenthal:  false association or affiliation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (1)(A)(Count 1), trademark dilution by blurring or tarnishment in violation of Section 43(c) of  the Lanham Act, 15 U.S.C.  § 1125(c)(1) (Count 2), and violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count 3).  In addition, Trump Plaza asserts claims for common law trade name infringement (Count  4),  trade name dilution (Count 5), and  statutory trade name dilution under  §495.151, Fla. Stat. (2007)(Count 6).

In the motion for summary judgment, Rosenthal challenges Trump Plaza's constitutional and prudential standing to bring any of these claims, contending that Trump Plaza is, at best, a permissive, non-exclusive licensee of the "Trump" or "Trump Plaza" marks which is unable to show the type of  commercial or competitive injury which the Lanham Act is designed to redress.  For reasons discussed below, the court has determined to deny the defendant's motion to dismiss on  the false association or affiliation claim (Count 1), but will grant and dismiss the federal trademark dilution (Count 2) and cybersquatting (Count 3) claims.

## III.  Discussion

### A.  Federal False Association or Affiliation Claim (Count 1)

In Count 1 of its amended complaint, Trump Plaza  charges  Rosenthal with false association or affiliation violation of  Section 43(a)(1) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A)[6].  This

---

[6]  When it filed its now operative amended complaint, the Association voluntarily dropped its previously lodged false advertising claim under  §1125(a)(1)(B).  Its Section 43(a) claim is now limited strictly to a false association or affiliation claim under §1125(a)(1)(A).

provision provides, in pertinent part, that:

> Any person who, on or in connection with any . . . services . . .. uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her . . . services, . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

Before assessing the parties' positions on this claim, a word is in order about the purpose and ambit of Section 43(a). The Fifth Circuit in *Schlotzsky's Ltd. v. Sterling Purchasing and Nat. Distribution Co., Inc.,* 520 F.3d 393 (5th Cir. 2008), observed that Section 43(a) is a remedial statute that should be construed broadly. Furthermore, it applies to several different categories or types of violations. For example, passing off/false designation of origin claims, reverse passing off claims, and false endorsement or association claims are all encompassed under Section 43(a).[7] The breadth of Section 43(a) was acknowledged by the Third Circuit in *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998), where the court formulated a new test for Lanham Act standing and, as one of its attributes, noted that it "provides appropriate flexibility in application to address factually disparate scenarios that may arise in the future . . . ."

---

[7] "Passing off," or "palming off," as it is sometimes called, occurs when a producer misrepresents his own goods or services as someone else's. "Reverse passing off," as the name implies, is the opposite situation, where a producer misrepresents someone else's goods or services as his or her own. *Dastar Corp. v Twentieth Century Fox Film Corp*., 539 U.S. 23, 123 S. Ct. 2041, 156 L.Ed.2d 18 (2003): *Waldman Publishing Corp. v Landoll, Inc*., 43 F.3d 775 (2d Cir. 1994).

Turning now to the case at bar, Trump Plaza contends that Rosenthal, in violation of §

1125(a)(1)(A) of the Lanham Act, configured advertisements with the Trump mark and the

descriptive phrase "Your 'Designated' Broker" to falsely represent that she has the sponsorship of,

or an affiliation with, Trump Plaza.  Furthermore, Trump Plaza contends these advertisements affect

its reputation and good will and are likely to cause confusion to buyers and sellers in the real estate

market.  It further alleges that Rosenthal's false or misleading claim has depressed property values

at Trump Plaza. [8]

Rosenthal challenges Trump Plaza's constitutional and prudential standing to bring this claim

on ground that (1) it is not the owner of the "Trump" or "Trump Plaza" marks and (2) is unable to

demonstrate standing to sue under Section 1125(a)(1)(A).  For reasons that follow, the court rejects

the defendant's two-pronged standing challenge on the false association or affiliation claim (Count

1).

### Constitutional Standing

Constitutional standing is the "irreducible constitutional minimum" of standing" which

enforces the Constitution's case-or-controversy requirement.  *Phoenix of Broward*, 489 F.3d 1156,

1161 (11th Cir. 2007); *Trump Hotels & Casino Resorts, Inc. v Mirage Resorts, Inc*., 140 F.3d 478,

484 (3d Cir. 1998), quoting *Lujan v Defenders of Wildlife*, 504 U.S. 555,560 (1992).

To demonstrate Article III standing, a plaintiff must show:  (1) an injury in fact, which is

concrete and particularized and  actual or imminent;  (2) the injury is fairly traceable to the

---

[8]Trump Plaza's President, Dale McNulty, avers that the misleading impression created by
Rosenthal's advertisement is likely to lead to less broker activity at the property, in turn depressing
buyer demand, leading to lower property values which Trump Plaza has an obligation to protect.
McNulty Affidavit [DE# 34-2].

7

challenged conduct of the defendant, and  (3) there is a substantial likelihood that a favorable decision will redress the injury.  *Phoenix of Broward, Inc. v  McDonald's Corp.,* 489 F.3d 1156, 1167 (11th Cir. 2007);  *Broward Amnesty International, USA v Battle,* 559 F.3d 1170  (11th Cir. 2009)*; Trump Hotels* at 484-485*,* citing *Lujan*, 504 U.S. at 560-561.  These requirements ensure that plaintiffs have a "personal stake" or "interest" in the outcome of  proceedings "sufficient to warrant ... [their] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on ... [their] behalf.'  *Wheeler v Travelers Ins. Co*,., 22 F.3d 534 (3d Cir. 1994).

In this case, Trump Plaza contends that Rosenthal's unauthorized use of the "Trump Plaza of the Palm Beaches" name coupled with the descriptive phrase "Your Designated Broker" constitutes a false and misleading statement of fact, *i.e.*, that Rosenthal is affiliated with or has the sponsorship of Trump Plaza, which constitutes an unauthorized misappropriation of the plaintiff's mark, and which is likely to confuse buyers and sellers in the real estate market.  In addition,  Trump Plaza contends that Rosenthal's acts adversely affect its reputation and good will.   The court  finds the allegations and proof at this stage of the litigation sufficient  to establish constitutional standing.

### Prudential Standing

Even if constitutional standing is met, prudential considerations may still preclude standing. In other words, to move forward with its suit, a plaintiff must establish both constitutional and prudential standing.  "The aim of 'prudential standing' is to determine whether the plaintiff is 'a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'"  *Phoenix of Broward*, 489 F.3d at 1172, quoting *Conte Bros. Automotive, Inc.  v Quaker*

*State-Slick 50, Inc.,* 165 F.3d 221,  225 (3d Cir 1998).[9]  The Eleventh Circuit, as a matter of first

impression, recently addressed the concept of prudential standing in the context of a Lanham Act

claim in  *Phoenix of Broward, Inc. v. McDonald's* Corp., 489 F.3d 1156 (11th Cir. 2007).  There the

court followed the Third Circuit's lead in *Conte Bros.* and adopted a flexible, five-part test to

evaluate a party' standing.  Although *Phoenix of Broward* involved a Lanham Act claim under

§43(a)(1)(B)(codified at 11 U.S.C. §1125), it seems beyond dispute that the test is also applicable

to claims brought under Section 43(a)(1)(A) of the Lanham Act[10]:  Thus, the factors that must be

evaluated in the case at bar are:

(1)     The nature of the plaintiff's alleged injury:  Is the injury of a type that Congress

        sought to redress in providing a private remedy for violations of the [Lanham Act]?

(2)     The directness or indirectness of the asserted injury.

(3)     The proximity or remoteness of the party to the alleged injurious conduct.

(4)     The speculativeness of the damages claim.

(5)     The risk of duplicative damages or complexity in apportioning damages.

*Phoenix of Broward,* 489 F.3d at 1164*; Natural Answers, Inc. v  SmithKline Beecham Corp,* 529

F.3d 1325, 1331-33 (11th Cir. 2008)(applying *Phoenix of Broward* test and finding plaintiff lacked

---

[9]  *Conte Bros.* borrowed  the test framed   for  antitrust litigation in *Assoc. Gen Contractors of Calif. Inc. v Calif State Council of Carpenters*, 459 U.S. 519 (1983) for application in Section 43(a) Lanham Act claims.

[10]  Finding no logical reason to distinguish standing considerations applicable in the context of false designation of origin claims under Section 43(a)(1)(A), the court follows and applies *Phoenix of Broward* in its analysis of prudential standing in the context of the Section 43(a)(1)(A) claim at issue here.  *See generally Phoenix of Broward*, 489 F.3d at 1167 ("[W]e conclude that the *Conte Bros*. test 'provides appropriate flexibility in application to address factually disparate scenarios that may arise in the future, while at the same time supplying a principled means for addressing standing under' 43(a) of the Lanham Act.")

prudential standing to bring Lanham Act claim*).* It is clear from this test that "standing under the Lanham Act does not turn on the label placed on the relationship between the parties," *Id.,* quoting *Conte Bros*., 165 F.3d at 235, or a "categorical" or "exclusive" requirement of "actual" or "direct" competition as the touchstone for determining prudential standing. *Id.* at 1164 (eschewing approach of Seventh, Ninth and Tenth Circuits requiring assertion of "discernible competitive injury").

Rather, under *Phoenix of Broward,* the dispositive issue is not whether and to what degree the parties are in "actual" or "direct" competition with each other, but rather the focus is appropriately on "whether the injury alleged is the type of injury that the Lanham Act was designed to redress – harm to the plaintiff's 'ability to compete' in the marketplace and erosion of the plaintiff's 'good will and reputation' that has been directly and proximately caused by the defendant's false advertising.*" Phoenix of Broward*, 489 at 1167, citing *Conte Bros.* at 234-36.

Thus the court will consider each of the required factors.

### 1. Type of Injury Alleged

The first factor requires the court to evaluate "whether the alleged injury is of a type Congress sought to redress in providing a private remedy for violations of the Lanham Act." *Phoenix*, *supra* at 1167-68.

A key concern of Section 43(a)(1)(A) is to protect against misappropriation of "the goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging," which would otherwise "create an impression that the products [or services] of the defendant originated with the plaintiff." *Flynn v AK Peters, Ltd.*, 377 F.3d 13 (1st Cir. 2004), citing *Purolater, Inc. v EFRA Distributors, Inc.,* 687 F.2d 554, 661 (1st Cir. 1982).

In this case, Trump Plaza contends that Rosenthal is misappropriating its trademark in an

effort to enhance the realtor's business and is thereby misleading consumers.  This goes to the heart of trademark law.  The key inquiry in a section 43(a) case is whether the defendant's use of the plaintiff's trademark is likely to create confusion in the minds of consumers.  Clearly Trump Plaza has an interest upholding the prestige of its mark and protecting against the devaluation of its property.  In short, the claimed injury to that interest is plainly  the type of injury that the Lanham Act is designed to address.  The court accordingly finds that this  factor weighs in favor of prudential standing.

### 2.  Directness of the Asserted Injury

The  second factor requires the court to examine the "directness" with which Rosenthal's conduct affected Trump Plaza.  As previously indicated, Trump Plaza alleges that Rosenthal misappropriated the "Trump" and "Trump Plaza" marks (marks in which Trump Plaza claims a protectable interest) and configured her advertisements by utilizing the descriptive phrase, "Your Designated Broker," to convey a false and misleading statement of fact, *i.e.,* that Rosenthal had some affiliation or association with Trump Plaza.  This was done, Trump Plaza alleges, to enhance Rosenthal's business interests at the expense of Trump Plaza's reputation and good will.  Moreover, all of this misled sellers and buyers in the condominium market.

Assuming Trump Plaza's status is that of an express licensee, it has the right and duty to safeguard its interest in the marks and to protect its reputation and good will.  It also has a direct interest in ensuring that these marks are not used to mislead prospective sellers and buyers of condominium units at Trump Plaza.  Sellers of units should not be misled in their selection of a realtor by misleading statements indicating that Rosenthal enjoys a special relationship with the condominium and, therefore, may be in a position to extend benefits to the buying public which other

11

realtors  could not extend (*e.g.,* access to the building and ability to show apartments at off hours, etc.).  By the same token, potential purchasers of condominium units in Trump Plaza, who may be desirous of obtaining some benefit or waiver from the condominium association ( *e.g.*, permission to complete renovation during an otherwise prohibited periods), should not be induced to deal with Rosenthal  because of a false representation  that she enjoys a special relationship with Trump Plaza and, therefore, may have influence with the condominium over and above other realtors.

Rosenthal's contention that whatever her actions, she cannot be the object of a Section 43(a) false association of affiliation claim because she is not a competitor of Trump Plaza is not legally sound.  As noted, there is no requirement of "actual" or "direct" competition in order to establish prudential standing to sue under Section 43(a).  *See Phoenix of Broward, supra*.  The more appropriate question is whether the plaintiff has a *reasonable interest* to be protected against false advertising.  Indeed, this was the implicit holding in *Conte Bros* where the Third Circuit, despite rejecting the Ninth Circuit's formulation on standing in *Waits v Frito Lay, Inc.,*  968 F.2d 1093 (9th Cir. 1992), agreed that the plaintiff in *Waits*, a non-competitor, had standing to pursue a Section 43(a) violation.  *See also Facenda v N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008).

Accordingly, the court finds that the second factor weighs in favor of prudential standing.

### 3.  Plaintiff's Proximity to the Allegedly Harmful Conduct

The third factor requires the court to examine the proximity of the plaintiff to the alleged injurious conduct.  In examining this factor, the court must determine whether there is an "identifiable class" of persons "whose self interest would normally motivate them to vindicate  the public interest" by bringing suit.  *Phoenix of Broward,* 489 F.3d at 1170, quoting *Conte Bros,* 165 F.3d at  234.  In other words, is there someone who has a greater interest than the plaintiff to advance

the law suit and thereby vindicate the public interest?  "The existence of such a class diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." *Phoenix,* citing *Joint Stock Soc'y v UDV N. America, Inc.,* 266 F.3d 164 (3d Cir. 2001).

With the possible exception of Donald Trump, no entity other than Trump Plaza possesses sufficient self interest to bring suit to vindicate the public interest at issue in this case.  Although there are allegations that the consuming public has been subjected to a likelihood of confusion, it is now well accepted that misled consumers would not be able to vindicate the public interest via the Lanham Act.  Thus the motivation and the burden rest squarely on Trump Plaza.  Simply put, the court finds no  "class" of plaintiffs  other than Trump Plaza  which  can more appropriately bring suit to vindicate the commercial or competitive harm wrought by Rosenthal's alleged misconduct.  Thus, this factor too counsels in favor of a finding of prudential standing.

.                     **4. Speculativeness of Alleged Damages**

The fourth factor requires the court to assess the speculativeness of damages alleged.  During oral argument, plaintiff's counsel announced that Trump Plaza is not seeking monetary damages but rather seeks injunctive relief to halt the offensive advertising.   Nonetheless, under Section 43(a)(1)(A) at least the likelihood of injury must be proven if only injunctive relief is to be ordered. This threshold requirement has been met in the case at bar.

In *Schlotzsky's Ltd. v. Sterling Purchasing and Nat. Distribution Co., Inc.,* 520 F.3d 393 (5th Cir. 2008), the court held that the injury requirement under Section 43(a) can be satisfied even though a party fails to establish a specific amount of actual loss.  What is needed is sufficient evidence that [the plaintiff] had been or was likely to be injured as a result of the violation of the Act.  The Fifth Circuit's opinion *Schlotszky's* is has particular relevance to the case at bar.  There a

noncompetitor made misrepresentations about its relationship to Schlotzsky's and thereby obtained more business for itself and arguably benefitted *Schlotzsky's*.   Nonetheless, the court upheld the judgment against the defendant because the evidence established that defendant deceptively used Schlotzsky's brand name in an effort to further defendant's position in the market place.   The Fifth Circuit ruled "these action violate the prohibition against representations of fact that are 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another.'"   The court also held that the injury element of a Section 43(a) claim is satisfied even if plaintiff fails to establish a specific amount of actual loss, as long as  plaintiff is able to show that  its own commercial interests have been or are likely to be injured as a result of the claimed violation.

In our case, Trump Plaza alleges that  Rosenthal deceptively used the "Trump Plaza of the Palm Beaches" mark together with the descriptive phrase, "Your Designated Broker," to mislead the public and thereby further her own economic interests.   According to plaintiff, Rosenthal's action directly and adversely impacted on Trump Plaza's reputation and good will.   The causal link between the alleged misconduct and resulting harm is sufficiently direct to satisfy the fourth factor, which likewise weighs in favor of prudential standing.

### 5.  Risk of Duplicative Damages

The fifth and final factor requires the court to evaluate the risk of awarding duplicative damages, or the complexity of apportioning damages.   Courts applying this fifth factor have examined the "number of potential claimants in the same position . . . as the plaintiff..." *Phoenix of Broward*, 489 F.3d at 1172.   In *Phoenix,* the court concluded that this factor weighed against prudential standing because "[i]f we were to hold that Phoenix [one of approximately eleven

14

thousand franchisees] has prudential standing to bring the instant claim, then every fast food competitor of McDonald's asserting that its sales had fallen by any amount during the relevant time period would also have prudential standing to bring such a claim." *Phoenix* at 1172.

In this case, there are only two possible plaintiffs - Donald Trump who owns the "Trump" and "Trump Plaza" marks, and the plaintiff Trump Plaza which has been authorized to use those marks. It is in the common interest of Mr. Trump and Trump Plaza to halt the misappropriation and misuse of their marks. Since their interests are aligned in this regard, and because Trump Plaza is not seeking compensatory damages on its Section 43(a) claim, there is no risk of duplicative damages. Thus, the court finds Trump Plaza to be an appropriate party to bring the asserted Section 43(a) claim here.

In sum, each of the five *Phoenix of Broward* factors weighs in favor of finding that Trump Plaza has prudential standing to bring a Lanham Act false association or affiliation claim against Rosenthal. Therefore, defendant's converted motion for summary judgment upon this claim shall be denied.

### B.  Federal Trademark Dilution Claim (Count 2)

Trump Plaza also charges Rosenthal with trademark dilution by blurring or tarnishment under the Trademark Dilution Revision Act (TDRA), 15 U.S.C. § 1125(c)(1), which provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

> To establish a *prima facie* case under this statute, plaintiff must show (1) plaintiff owns a

famous mark that is distinctive; (2) defendant commenced using a similar mark in commerce that is actually diluting the famous mark (i.e. actually lessening the capacity of the mark to identify and distinguish the goods or services in question); (3) a similarity between the defendant's mark and the famous mark gives rise to an association between the marks, and (4) the association is likely to impair the distinctiveness of the famous mark, or likely to harm the reputation of the famous mark. *Louis Vuitton Malleter SA v Haute Diggity Dog, LLC,* 507 F.3d 252, 264-265 (4th Cir. 2007). In the context of blurring, distinctiveness refers to the ability of the famous mark uniquely to identify a single source and thus maintain its selling power. *Id.* In proving a dilution claim under the TDRA, the plaintiff need not show actual or likely confusion, the presence of competition, or actual economic injury. 15 U.S.C. §1125(c)(1).

Rosenthal contends that Trump Plaza lacks standing to bring its TDRA claim because it is unable to show, as a threshold matter, that it is "the owner" of the alleged famous, unregistered mark, "Trump Plaza of the Palm Beaches." In this regard, Rosenthal points to federal trademark registrations which show that Donald Trump owns the mark "Trump" and "Trump Plaza" marks and asserts that where, as here, a party registers a trademark on the USPTO principal register, that registration is *prima facie* evidence of the validity of the register mark and the registrant's exclusive right to use the mark on the goods and services specified in the registration. Thus, she contends that Mr. Trump's "Trump" and "Trump Plaza" registrations are evidence of his exclusive right of use over those marks, and that his prior registration precludes the Association from acquiring any rights in the purported unregistered trademark "Trump Plaza of the Palm Beaches,"

which incorporates those marks. [11]

Trump Plaza counters that while the federal trademark registrations' listing of Mr. Trump as owner serves as *prima facie* evidence of Mr. Trump's ownership rights, its agreement with Mr. Trump and The Trump Organization, granting it permission to use the "Trump" mark in its name and in the name of the Condominium, gives it a protectable interest in the mark.

Some courts have permitted trademark infringement and dilution suits to be maintained by a "truly exclusive licensee" of trademarked goods , *i.e.* one who has the right even to exclude his licensor from using the mark. *Quabaug Rubber Co. v Fabiano Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977)(dictum); *Ultrapure Sys., Inc. v HAM-LET Group*, 921 F. Supp. 659 (N.D. Cal. 1996); *Ferrero U.S.A. , Inc. v Ozak Trading, Inc*. 753 F. Supp. 1240 (D. N.J.), *aff'd*, 935 F.2d 1281 (3d Cir. 1991); *Etri, Inc. v Nippon Miniature Bearing Corp*., 1989 WL 99575 (N.D. Ill. 1989). The theory is that standing may exist where the "licensing" agreement grants to an exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee. *See Quabaug*, 567 F.2d at 159 n. 2. *See also Finance Inv. Co v Geberit A.G.*, 165 F.3d 526, 531 (7th Cir. 1998)(truly exclusive licensee is equated with an assignee, since no right to use the mark is reserved to the licensor; licensee's standing derives from his presumed status as an assignee).

Conversely, where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant -licensor's ownership rights, the licensee,

_____

[11]  The addition of the geographically descriptive phrase "of the Palm Beaches," this does not avoid confusion with Mr. Trump's trademarks because the dominant feature of the mark is "TRUMP PLAZA."  15 U.S.C. §1052(E)(2); *Country Floors Inc v A Partnership Composed of Gepner and Ford*, 930 F.2d 1056 (3d Cir. 1991); *Foxtrap, Inc. v Foxtrap, Inc*., 671 F.2d 636 (D.C. Cir. 1982)(where registrant owns exclusive rights to mark, second comer cannot gain rights in substantially same mark by merely adding geographic identifier).

even if exclusive, does not have standing to enforce the mark in an infringement or dilution action under the Lanham Act. *See Finance Inv. Co*, 165 F.3d at 532 (denying standing to exclusive licensee where licensing agreement set forth many duties and rights inconsistent with assignment, such as geographic limitation in licensee's territory); *Gruen Marketing Corp. v Benrus Watch Co.,* 955 F. Supp. 979 (N.D. Ill. 1997); *Silverstar Enters., Inc. v Aday*, 537 F. Supp. 236, 240 (S.D.N.Y. 1982).

Thus, while a "truly exclusive licensee," *i.e.* one who has the right even to exclude his licensor from using the mark, might be considered an "assignee," an agreement that merely confers a conditional, non-exclusive right to use the mark does not constitute an assignment. In this case, the letter confirming Trump Plaza's ability to use the Trump marks does not explicitly exclude Mr. Trump or any of his related companies from using the marks in the West Palm Beach area. Moreover, the agreement contains a specific limitation on Trump Plaza's rights of use, such as its obligation to maintain the property according to the high standards of quality and luxury associated with the Trump name, thus reserving rights indicative of ownership to Mr. Trump and the Trump Organization.

Plainly, Trump Plaza is a non-exclusive licensee at best, with ultimate control and ownership of the Trump marks resting with Mr. Trump and The Trump Organization. The Trump Organization's powers of oversight and reserved ability to "police the trademark" are inconsistent with the notion that Trump Plaza owns the "Trump Plaza of the Palm Beaches" trademark in its territory. Under these circumstances, Trump Plaza lacks standing to sue under the TDRA. *See ICEE Distributors, Inc. v J & J Snack Foods Corp.*, 325 F.3d 586 (5th Cir. 2003)(distributor lacked standing to sue under Dilution Act where it was merely exclusive licensee without specific authority

18

to prohibit licensor from using the marks in its territory).  *Cf. Bliss Clearing Niagara, Inc. v Midwest Brake Bond Co.*, 339 F. Supp. 2d 944 (W.D. Mich. 2004)(clutch manufacturer had standing as license of trademark to sue for trademark infringement and dilution where it has exclusive and perpetual right and license to use mark throughout world and license lacked features indicative of license agreement, such as quality control provisions and geographical limitations).

### C.  Federal Anti Cybersquatting Act Claim (Count 3)

Finally, Trump Plaza charges Rosenthal with violation of Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. §1125(d) (1)(A) which provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> (I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that –
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark or
>
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

Cybersquatting is a form of trademark misuse.  "This activity is defined to be the conduct of one who reserves with a network information center a domain name consisting of the mark or name of a company for the purpose of relinquishing the right to the domain name back to the legitimate owner for a price."  *Eagle Hospital Physicians, LLC v  SRG Consulting, Inc*., 561 F.3d 1298 (11th Cir. 2009), citing McCarthy on Trademarks and Unfair Competition § 24:17 (4th ed.

2008).

As a threshold matter, standing under this statute is limited to registrants of trademarks, as the statute explicitly authorizes a cause of action "by the owner of a mark." *America Online Latino v America Online, Inc.,* 250 F. Supp.2d 351 (S.D.N.Y), clarified 2003 WL 1842874 (S.D.N.Y. 2003) (registrant of "americaonlinelatino.com" domain name could not state claim for relief against competitor under ACPA regardless of whether registrant adopted it in good faith, where registrant admitted that he did not own trademark and was indisputably not senior user). In this case, Trump Plaza admits it is not the owner of the "Trump" or "Trump Plaza" marks, and is indisputably not the senior user of those marks. Therefore, it lacks standing to assert any claim for relief under the ACPA.

In addition, the undisputed evidence shows that Rosenthal, when confronted on this issue by Trump Plaza, transferred the domain name "trumpplazaofthepalmbeaches" to The Trump Organization before this suit was filed. This defeats the allegation that Rosenthal had a "bad faith intent to profit from" use of the "Trump Plaza of the Palm Beaches" mark in a domain name as required to state a claim under the Act. *See e.g. 24 Hour Fitness USA, Inc., v 24/7 Tribeca Fitness,* 447 F. Supp. 2d 266 (S.D.N.Y. 2006), *aff'd* 247 Fed Appx 232 (2d Cir. 2007). The court shall accordingly grant the converted motion for summary judgment on the ACPA claim.

## IV.  Conclusion

Based on the foregoing, it is **ORDERED and ADJUDGED**:

1.  The defendants' converted motion for summary judgment [DE# 11, 24] is **DENIED** as to the Lanham Act false association or affiliation claim (Count1).

2.  The defendants' converted motion for summary judgment [DE# 11, 24] is G**RANTED**

as to the trademark dilution by blurring and tarnishment claim  (Count 2) and the cybersquatting

claim (Count 3) which are  **DISMISSED WITH PREJUDICE** for lack of standing.

3.  The defendants' motion to strike hearsay declaration [DE# 35] is **DENIED.**

4.  The defendants' motion for Rule 11 Sanctions [DE# 26] is **DENIED** and the plaintiff's

corresponding motion for attorneys' fees in defense of the motion is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 24th day of June,

2009.

Daniel T. K. Hurley
United States District Judge

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts